(C. D. 924)

INNIS SPEIDEN & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 12, 1945)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Robert G. O'Grady* and *Richard F. Weeks,* special attorneys), for the defendant.
*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) as *amicus curiae.*

Before OLIVER, COLE, and TILSON, Judges

TILSON, Judge: The merchandise the subject of this suit consists of a product known as wool wax which was classified by the collector of customs as an animal wax, not specially provided for, and accorded free entry for normal tariff purposes under paragraph 1796 of the Tariff Act of 1930, but a tax of 3 cents per pound was levied upon the merchandise under the first provision of section 601 (c) (8) of the Revenue Act of 1932, as amended by section 701 of the Revenue Act of 1936, which has been codified as section 2491 (a) of the Internal Revenue Code.

Two claims are made in the protest, the first being that the merchandise is not taxable under the revenue code provision referred

to, and the second that if so taxable, tax was taken upon an excessive weight. The second claim was not pressed, and reliance is evidently placed on the first claim.

The record before us consists of the report of a Government chemist, who analyzed a sample of the imported merchandise, and the record in the case of *P. Biersdorf & Co., Inc.* v. *United States,* reported in 69 Treas. Dec. 564, T. D. 48230.

The chemist's report, exhibit 1, reads as follows:

The sample is wool wax, similar to merchandise subject of T. D. 48230. In our opinion taxable under I. R. C. 2491 (a)—Sample retained.

The incorporated case involved the question of whether wool-fat wax, which is made from wool grease, was dutiable as an animal grease, not specially provided for, under the provision therefor in paragraph 52 of the Tariff Act of 1930, or was entitled to free entry under the provision in paragraph 1796 for animal wax, not specially provided for.

The uncontradicted testimony of a witness for the plaintiff in that case established the process of manufacture of the wool-fat wax involved as follows:

The wool grease is dissolved in ether and treated with bone char, and the ether solution of the fats is evaporated and the residue in the bone is dissolved out of the bone char—this residue is non-saponifiable matter—and then again, by means of solvents taken out of the bone char, the solvents are evaporated, and the woolfat wax, or the resultant property is the woolfat wax.

Put more simply, the fats in the wool grease are removed, leaving wool-fat wax.

The provisions of the revenue code under which the tax complained of was levied read so far as pertinent, as follows:

SEC. 2490. IMPOSITION OF TAX.

In addition to any other tax or duty imposed by law, there shall be imposed upon the following articles imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates set forth in section 2491, to be paid by the importer.

SEC. 2491. RATE OF TAX.

(a) * * * inedible animal greases, fatty acids derived from any of the foregoing, and salts of any of the foregoing; all the foregoing, whether or not refined. sulphonated, sulphated, hydrogenated, or otherwise processed, 3 cents per pound * * *.

The position of the plaintiff is that the article before us is not an inedible animal grease, but an animal wax, and is entitled to entry free of the tax imposed, citing the decision in the incorporated case and the decision of the Court of Customs and Patent Appeals in *Beiersdorf & Co., Inc.* v. *United States,* 31 C. C. P. A. 158, C. A. D. 267.

The defendant has two alternative contentions: First, that the article at bar is an inedible animal grease, to wit, wool grease, which has been refined, and hence is squarely within the provisions of section

2491 (a), above quoted, or, second, that if not taxable under said section 2491 (a), it is nevertheless taxable under the provisions of section 2491 (c), which provides, among other things, that on—

Any article, merchandise, or combination  *  *  *  10 per centum or more of the quantity by weight of which consists of, or is derived directly or indirectly from, one or more of the products specified above in this paragraph  *  *  *.

a tax shall be imposed—

*  *  *  at the rate or rates per pound equal to that proportion of the rate or rates prescribed in this paragraph  *  *  *  in respect of such product or products which the quantity by weight of the imported article, merchandise, or combination, consisting of or derived from such product or products, bears to the total weight of the imported article, merchandise, or combination  *  *  *.

As hereinbefore stated, the contest in the incorporated case was between a tariff classification for animal grease, not specially provided for, and animal wax, not specially provided for. The First Division of this court held that the merchandise was an animal wax and not an animal grease (*Biersdorf* v. *United States*, T. D. 48230).

*Beiersdorf & Co., Inc.* v. *United States*, C. A. D. 267, cited by the plaintiff, and sought to be distinguished by the defendant, involved merchandise produced, according to the statement therein, as follows:

*  *  *  Wool grease or lanolin (which is a purified wool grease) is distilled or saponified to obtain wool grease fatty acids. These fatty acids are heated together with glycerine, which is of animal origin, in a process known as esterification. The product then becomes a glycerine ester of wool grease fatty acid. After cooling, it is skimmed off the glycerine and boiled in a charcoal solution to purify it, and it is then evaporated. The product at bar remains.

That merchandise was a waxy material and the court held that by reason of its physical properties and chemical constituents it came within the definition of the term "wax" as used in the Tariff Act of 1930. With reference to the tax which had been imposed under the revenue act provision here involved, the court found that the merchandise was more than an animal grease and more than a fatty acid derived therefrom, having been processed beyond those states, and further found that it had been neither refined, sulphonated, sulphated, or hydrogenated. As to whether it had been "otherwise processed," the court concluded that to come within that designation the inedible animal greases or fatty acids derived from the same—

*  *  *  must still remain, after processing, greases or fatty acids.

whereas the merchandise before it was something else, viz, a wax.

We think it is clear from the record that the article here in issue is not an inedible animal grease which has been sulphonated, sulphated, or hydrogenated. Since the article before us is, like the article involved in the later *Beiersdorf* case just referred to, a wax, as distinguished from a grease, we think that under that decision it must be

held that it is not an inedible animal grease which has been "otherwise processed."

Such a holding would seem automatically to dispose of the question of whether it is an inedible animal grease which has been refined, as contended by the Government, for, if it is excluded from the purview of the term "inedible animal grease * * * otherwise processed" by reason of the fact that it no longer still remains a grease, consistency would require that the same reason would exclude it from classification as "inedible animal grease * * * refined."

The record establishes that the process to which the parent substance, wool grease, was subjected in order to produce the article at bar was a separation process in order to obtain a fraction of the wool grease. It is a matter of common knowledge that the process of fractionation, when applied to crude oil in order to obtain gasoline, bunker oil, etc., is called "refining." The process here in question was also called "refining" by one of the witnesses for the plaintiff, Dr. Harvey A. Seil, a chemist of considerable experience in connection with oils, fats, greases, and waxes. His testimony on the point is as follows:

R. Q. From your analytical work on Exhibit 1 does it appear that it was just simply obtained from wool grease subjected to a refining process?—A. Yes, it is a refining process resulting in the production of this product from wool grease (R. p. 26).

*    *    *    *    *    *    *

R. Q. Doctor, in this, what is the object of this separation? * * *—A. The object of this process is the separation of the valuable ingredient of the wool grease.

*    *    *    *    *    *    *

R. Q. What is the separation?—A. It is well known that the wool grease owes its peculiar properties to what we call its unsaponifiable matter, and the more nearly you have the unsaponifiable matter pure, the better the product is; and this process of manufacture is attempted to eliminate all the fat from the unsaponifiable matter which is represented here.

R. Q. And the sample represents the unsaponifiable matter?—A. Essentially it does.

*    *    *    *    *    *    *

R. X Q. Well you don't eliminate all the good qualities of the animal grease from which the product is made, do you?—A. You mean separate the good qualities?

R. X Q. Yes.—A. Practically (R. pp. 29, 30).

In spite of this testimony, and of the argument made in the brief filed on behalf of the Government that the involved merchandise is merely refined wool grease, we are of the opinion that the decision in the *Beiersdorf* case, C. A. D. 267, must be held to control herein with respect to taxability under section 2491 (a), *supra*. There can be no question but that the merchandise at bar is a wax, wool wax or wool-fat wax, and the essence of the *Beiersdorf* decision is that such waxes are more than the grease from which they are made and not classifiable under the provision therefor in section 2491 (a).

However, there still remains the contention urged on behalf of the Government, that if the merchandise is not taxable under section 2491 (a), it is nevertheless taxable under section 2491 (c).

A reading of section 2491 (c), *supra*, shows that it is an extremely broad provision, the obvious purpose of which was to carry further the taxing plan expressed in section 2491 (a), and other sections of the code, so as to subject to tax articles, merchandise, or combinations a substantial quantity (set at 10 per centum or more) by weight of which consist of, or are derived from products which, if imported by themselves, would be taxable. The record before us indicates that 100 per centum of the article involved, wool-fat wax, was derived from wool grease, a taxable product, since it appears that it was merely separated from such grease, the substances added in order to effect such separation being removed before importation. It would appear, therefore, that the article in issue is, in fact, taxable under section 2491 (c).

It should be stated that the Government's contention for classification of the merchandise under section 2491 (c) was first made in the brief filed in its behalf, which, in point of time, followed that filed on behalf of the plaintiff. No effort was made on behalf of the plaintiff to reply thereto, but the matter is treated in a brief filed by *amicus curiae*, and therein argument against such a finding is based upon the contention that the burden of an importer protesting an assessment under the revenue code provision is not the same as his burden when protesting an assessment under the Tariff Act of 1930. It is conceded that under the tariff act a dual burden is imposed upon the plaintiff in that he must not only prove that the classification of the collector is incorrect, but must also establish the correctness of the classification he claims. It is argued, however, that if the importer establishes the incorrectness of a revenue code assessment, he has no further duty.

This difference between the situation under the tariff act and under the revenue code, it is said, is because all imported merchandise is either dutiable or free of duty under some provision of the tariff act, while only a comparatively small number of articles are taxable under the revenue code. Hence, it is argued, it is not necessary for the importer who has claimed and established the inapplicability of the revenue code provision under which his merchandise was classified to go further and prove that the merchandise is or is not taxable under some other section of the code.

In section 2493 of the revenue code it is provided that—

The tax imposed under section 2490 shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act * * *.

The instant protest was filed under and by virtue of the provisions of section 514 of the Tariff Act of 1930. We think that in all suits filed under that section involving the classification of merchandise, the court must, of necessity, determine the correct classification, if there is evidence before it upon which such a determination may be made. If the plaintiff makes the correct classification claim and there is evidence to support it, judgment must be rendered in favor of the plaintiff. If the correct classification claim is not made, even though there be evidence establishing the proper classification, judgment must be rendered in favor of the defendant, without approving the classification of the collector.

The court cannot, of course, render a judgment which would, in effect, reclassify the merchandise outside the limits of the issue as drawn by the classification of the collector and the protest of the plaintiff. In cases where the correct classification has been found to be outside those limits, the judgment of this and our appellate court has consistently been that the protest must be overruled without affirming the action of the collector, and we are satisfied that such must be the order in this case.

Judgment will therefore be rendered accordingly.