(C.D. 2401)

GEO. H. MCFADDEN & BROS., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 27, 1963)

*Eugene R. Pickrell* (*Murray Sklaroff* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Richard E. FitzGibbon* and *James F. O'Hara,* trial attorneys), for the defendent.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The merchandise covered by the above protest was described on the invoice as " 'Perlon' off-grade untwisted on stretchcops" and was classified under the provisions of paragraph 1301 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as yarns of rayon or other synthetic textile, etc., and assessed with duty at the rate of 22½ per centum ad valorem.

It is the contention of plaintiff herein that said merchandise is properly dutiable at the rate of 21 per centum ad valorem, but not less than 17 cents per pound, under said paragraph 1301, as modified, *supra*, as filaments of rayon or other synthetic textile, grouped, etc., or, in the alternative, at 10 per centum ad valorem under the provisions of paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and T.D. 52827, as articles manufactured, not specially provided for.

The pertinent text of the statutory provisions above referred to is here set forth:

Paragraph 1301 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108:

Filaments of rayon or other synthetic textile, not specially provided for:

\*   \*   \*   \*   \*   \*   \*

  Grouped:

\*   \*   \*   \*   \*   \*   \*

   Weighing less than 150 deniers per length of 450 meters___ 21% ad val., but not less than 17¢ per lb.

Yarns of rayon or other synthetic textile, not specially provided for, singles, weighing less than 150 deniers per length of 450 meters, and not having more than 20 turns twist per inch_____ 22½% ad val., but not less than 25¢ per lb.

Paragraph 1558 of the Tariff Act of 1930, as modified, *supra*, which is claimed in the alternative:

Articles manufactured, in whole or in part, not specially provided for (\* \* \*) _____ 10% ad val.

The issue thus presented to the court is whether the imported merchandise consists of filaments or yarns, and if neither, does the merchandise properly fall within the purview of paragraph 1558, *supra?*

In an effort to establish that the involved merchandise consists of filaments, plaintiff introduced the testimony of Dr. Robert Schnegg by way of a commission, duly issued by the court, and the testimony of Mr. Norman J. Alexander.

Defendant contends plaintiff has failed to overcome the presumption of correctness attaching to the classification of the subject merchandise as yarns.

Dr. Schnegg testified via the commission that, since October 1953, he has been employed in the Perlon production department of the manufacturer of the imported merchandise; that he studied chemistry at the University of Munich from 1926 to 1933 and obtained a degree of "Dr. phil."; that he is familiar with the merchandise described as " 'Perlon' off-grade untwisted on stretchcops," covered by the entry involved herein, having been supervisor of production for the manufacturer. Dr. Schnegg then described the process of production as follows:

> * * * melted polycaprolactam is pumped through spinnerets to form filaments which are combined by oily emulsion (fatty acid oil and petroleum oil) to one group of filaments which then is wound on cylindrical spools. From the cylindrical spools the grouped filament is then stretched on a draw twister by 4 times its original length and then wound onto stretchcops (bobbins) which are the same as the stretchcops shipped to the United States.

The witness further testified that the denier of the merchandise is 40/9, which means 40 denier yarn consisting of 9 filaments permanently combined into 1 thread; that he is of the opinion there is no twist put into the yarn; that whatever turns the yarn may have were less than 1 per inch and were due to the transfer of the grouped filament from cylindrical spool to the stretchcop bobbin; that the merchandise is a grouped filament; that, in the production of Perlon offgrade twisted yarn of 300 turns per meter, the yarn is transferred from stretchcop, turning at 9,000 revolutions per minute, to a cylindrical spool, turning at 30 revolutions per minute; that the difference in revolutions per minute caused the twist of 300 turns per meter, which is then heatset by steam in order to stabilize the twist; that after this additional process, the twisted yarn is wound onto pineapple cones; that the offgrade is a designation for Perlon which has mechanical faults, such as low weight of yarn per stretchcop, or broken filaments in multifilament yarn, or denier variation in the yarn, due to varying speed in extrusion or of the rollers in the stretching process.

Mr. Norman J. Alexander, called on behalf of plaintiff, testified that he is a chemical engineer; at present, he is vice president of a textile manufacturing concern, with which he has been associated for the past 2 years; that his experience covers 18 years in the textile manufacturing field, having been associated with several other textile manufacturing concerns as head of a manufacturing division; that he is familiar with merchandise, such as exhibit 4, by virtue of having used a few hundred thousand pounds of it for the manufacture of woven or warp knit fabrics; that the merchandise was subjected to a cleaning and throwing process to enable it to be prepared for weaving or warp knitting.

The witness defined the throwing process as making the yarn ready for subsequent textile manufacturing, which is essentially cleaning and twisting; that the merchandise had various defects and represented a wide variety of sizes of stretchcops; that all defects had to be cleaned and the merchandise twisted; that the twisting is done to render the yarn suitable to be protected against the abrasive characteristics of textile machinery; that the cleaning does not refer to a dirt-removing process, but the removal of physical imperfections; that this is done either by inspecting or by cleaner blades during the throwing process; that a yarn of synthetic textile is a continuous filament synthetic textile yarn, prepared from groups of synthetic filaments, wherein they have been suitably twisted or thrown for their proposed end use; that the expression "grouped filaments" is not a trade expression.

Mr. Alexander then testified that the fractional turn found in exhibit 4 is characteristic to the manufactures of synthetic fibers from polymers, since the manufactures of continuous filament textiles in their extruded form are not usable as textile material and require subsequent drawing processes to render textile characteristics to these synthetic textiles; that part of the process involved taking the extruded synthetic material "over end" off the package on which it is wound after extrusion and drawing it and winding it on a new takeup package; that the taking of the synthetic textile off "over end" results in putting a fractional turn into this material during the drawing process.

It was stipulated by and between counsel for the respective parties that the imported merchandise contained 0.52 of a twist per inch, roughly about a half turn per inch.

The issue thus presented to the court is whether the imported merchandise is a "yarn" or a "filament." It is well established that tariff terms are presumed to be used by the Congress in accordance with their meaning in the language of commerce, and, unless a special commercial designation is shown, the common meaning of the term is presumed to be the commercial meaning. *United States* v. *M. & D. Miller, Inc.*, 41 CCPA 226, C.A.D. 556.

In determining the common meaning of tariff terminology, the court may consult dictionaries and other authorities. *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388; *United States* v. *Tropical Craft Corp.*, 42 CCPA 223, C.A.D. 598.

Webster's New International Dictionary, unabridged (1929), gives the following definition of "yarn":

yarn, * * * 1. Spun wool; woolen thread; also, thread of other material, as of cotton, flax, hemp, or silk; material spun and prepared for use in weaving, knitting, manufacturing sewing thread, or the like.

Matthews' Textile Fibers, sixth edition, makes the following statement with respect to "yarn":

A yarn is a generic term, according to A.S.T.M., for "an assemblage of fibers or filaments, either natural or manufactured, twisted or laid together to form a continuous strand suitable for use in weaving, knitting, or otherwise intertwining to form textile fabrics."

Senate Report No. 37, 71st Congress, 1st session, was made to accompany H.R. 2667, which subsequently became the Tariff Act of 1930. Under schedule 13, paragraph 1301, the following information is contained:

As written, the House bill provides in paragraph 1301 for rayon yarns, which term in trade usage means ordinarily filaments which in the process of manufacture are twisted together and are adaptable for use in textile operations without further conversion. Thus interpreted, the word "yarn" does not include artificial horsehair—a monofilament—nor the long-length filaments which, after extrusion from the spinning nozzle, are wound by parallel grouping without twisting. Since such filaments may be twisted into a yarn by silk throwsters and manufacturing consumers, they would be competitive after conversion from the imported state. There is, therefore, added to paragraph 1301 a new provision for rayon filaments, single or grouped, to cover both the artificial horsehair and the long untwisted filaments.

To aid the silk throwsters who are depending on the newly developed demand for rayon crêpe yarns as a business stimulant to energize the depressed throwing industry, there is appended to paragraph 1301 a new provision for a cumulative specific duty of 50 cents per pound on yarns having more than 20 turns twist per inch. At the present House rate, the increment of duty obtained on the ad valorem basis by reason of the increased value of the high-twist yarns as compared with regular yarns is not sufficient to take care of the difference between domestic and foreign throwing costs. Moreover, in the event of a price decline bringing the minimum specific proviso into operation, rayon crêpe yarn would be on a duty parity with rayon yarn of ordinary twist, an inequitable adjustment in view of the extra labor involved in its manufacture. The differential is added, therefore, to give these high-twist yarns the necessary protection.

In view of the foregoing definitions and information, in order for an article to be a yarn, it must be prepared for or suitable for use in weaving, knitting, or otherwise suitable to form a textile fabric. The record herein establishes that the imported Perlon, which is offgrade, is not so suitable. While there is some evidence to indicate that first-quality merchandise containing the same slight twist might be suitable, without further processing, for further manufacture into textile fabric, the involved merchandise is not in such a condition. Suitability, in the tariff sense, means actually, practically, and commercially fit. *Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206, T.D. 31947; *Coro, Inc.* v. *United States*, 41 CCPA 215, C.A.D. 554.

We are of the opinion that, although the merchandise does contain approximately a half turn per inch, the record herein establishes that said offgrade Perlon is not suitable in its present condition, without further processing, to be manufactured into textile fabric.

The definition of "filament," as given in Matthews' Textile Fibers, *supra*, is as follows:

* * * A "filament" is a processed fiber of continuous length most conveniently measured in yards or meters. There may be only one (mono) or many (multi) filaments, as in a rayon or silk yarn. The basic difference between a fiber and a filament is one of length.

A.S.T.M. [13] defines a filament as "a variety of fiber characterized by extreme length" and appends a note stating that "the extreme length of filaments permits their being used in yarn without twist or with very low twist, and they are usually fabricated into yarn without the spinning operation required for fibers."

The record establishes to our satisfaction that the involved offgrade Perlon consists of filaments. The slight twist stipulated to be contained in said merchandise does not, in a tariff sense, convert the filaments into a yarn since, as indicated, *supra*, said merchandise would require further processing before it would be suitable for the manufacture of textile fabrics. Accordingly, we find the involved merchandise to be properly dutiable at the rate of 21 per centum ad valorem, but not less than 17 cents per pound, under the provisions of paragraph 1301 of the Tariff Act of 1930, as modified, *supra*, as filaments of rayon or other synthetic textile, not specially provided for, grouped, weighing less than 150 deniers per length of 450 meters.

In view of the foregoing, the alternative claim of plaintiff, under the provisions of paragraph 1558 of the Tariff Act of 1930, as modified, *supra*, is without merit, since the imported merchandise is enumerated under said paragraph 1301, *supra*.

In conformity with the foregoing, the claim that the merchandise is properly dutiable under the provision for filaments contained in paragraph 1301, *supra*, is sustained. In all other respects and as to all other claims, the protest is overruled.

Judgment will be rendered accordingly.