(C. D. 2445)

RANDOLPH RAND CORP. J. J. BOLL } v. UNITED STATES

## United States Customs Court, Third Division

(Decided April 20, 1964)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiffs. *John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *James F. O'Hara*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The merchandise of this litigation is conceded to consist of metal frames that were imported in 1957 and 1958, which were used in the manufacture of leather cases, or boxes. The frames were charged with duty as parts of smokers' articles, not specially provided for, at 30 percent under paragraph 1552.

Plaintiffs in their protest claim, alternatively, that these frames are properly dutiable as articles or wares, not specially provided for, composed wholly or in chief value of metal, not plated with platinum, gold, or silver, or colored with gold lacquer, at 20 percent under paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108); or as parts of cigarette cases in chief value of leather, at 20 percent under modified paragraph 1552. In their brief, plaintiffs state that the latter protest claim "is not pressed." No arguments are adduced in support of that claim. We deem the failure of plaintiffs to pursue a claim raised by the protest, to be tantamount to abandonment of that claim. Nothing is done by counsel to assist the court in deciding the issue that is not "pressed," whatever that expression is intended to mean.

As to the protest claim that is now litigated before us, the instant suit is, in effect, a retrial of that issue, as previously before the court in *Randolph Rand Corporation* and *J. J. Boll* v. *United States*, 45 Cust. Ct. 130, C.D. 2211. The record of that case has been incorporated into the record here. Plaintiffs contend that our decision here is controlled by our decision in the incorporated case. Our decision there was for plaintiffs. Without discussing the limited applicability of the doctrine of *res adjudicata* in customs litigation, it suffices to observe what must be fairly obvious, namely, that our decisions are based on the evidence of record in each decided case. We held in the incorporated case that plaintiffs had made a *prima facie* case and, inasmuch as defendant there introduced no evidence, we held that the *prima facie* case made by plaintiffs had not been rebutted by defendant.

Here, however, defendant has introduced evidence intended as such rebuttal. Plaintiffs also have introduced evidence. We proceed to

consider the issues on the entire record in the case now before us, which includes both the record in the incorporated case and certain newly adduced evidence.

Defendant raised on trial two alternative claims and asked us to find, if we should rule against the collector's classification, that the proper alternatives are not either of those which plaintiffs' protest claims, but instead either classification under paragraph 1527, subdivision (c) (2), as modified by the Protocol of Terms of Accession of Japan to the General Agreement on Tariffs and Trade (T.D. 53865), at 55 percent, as parts of articles, valued above 20 cents per dozen pieces, designed to be carried on or about or attached to the person, or classification under subdivision (d) of the same paragraph (T.D. 52739), at 40 percent as stampings, galleries, mesh, and other materials of metal, suitable for use in the manufacture of articles provided for in paragraph 1527 (a), (b), or (c).

Our first consideration is whether plaintiffs have overcome here, as they did in the incorporated case, the presumption that the collector's classification was correct. We hold that they have overcome the presumption. If the record here consisted solely of the record in the incorporated case, our decision here would be the same as our decision was there. The question is, has defendant's newly adduced evidence rebutted the *prima facie* case made in the incorporated record.

The official papers are in evidence. On the initiative of defense counsel, it was stipulated that these metal frames are articles in chief value of metal, other than gold or platinum, and valued at over 20 cents per dozen pieces. It is noted that brass is not the metal described in this stipulation, nor is silver excluded as the metal of chief value. However, this seems to be an inadvertent omission from the stipulation. In the incorporated case, it was stipulated that the frames there were brass, the instant consumption entry and invoices (which are of record) describe the frames as brass, and it was stipulated on trial that "articles style numbers 3972, 4122 and 3988" are similar in all material respects to the frames in the incorporated case. (R. 3.) As to articles of those item numbers, we find they are in chief value of brass.

Plaintiffs adduced the testimony of Mr. Max Randolph, president of plaintiff Randolph Rand Corp. Mr. Randolph testified also in the incorporated case. On direct examination here, he produced a set of two articles (exhibits 13–A and 13–B) which house an electronic device for the remote-control opening of garage doors. The frames used in manufacture of these cases are such frames as those here in issue. Mr. Randolph's company sold the frames to a St. Louis concern, which used the frames in manufacturing the cases. The cases were, in turn, sold to a firm identified only as Telectron. Sales to the St. Louis con-

cern for manufacture of these cases ran to "a good portion" of 50,000 frames a month, which the witness characterized as "a very large quantity." (R. 20.)

On cross-examination, defense counsel questioned Mr. Randolph regarding a grant of letters patent in the United States. The letters patent were not received in evidence. However, the witness testified that features of some of the frames in issue, such as the closure, were patented.

Defendant called three witnesses. The first, Mr. Mason Warner, vice president of St. Thomas, Inc., said he had purchased metal frames, item 3972, from Randolph Rand since 1955, and that he used them to make cigarette cases and, also, to make sample stud boxes and sample pill boxes. (R. 50.) The latter had not been put into commercial production; but, on cross-examination, witness said that he was, at the time of testimony, preparing to engage in commercial production of those boxes. (R. 71.) The decision to do this had "been stalled because of so many pressing things that we want to put into production, and we have room for only so many. This is in our plant." (R. 73.)

On request of defendant, the case was then transferred to St. Louis, for further testimony. Plaintiffs were permitted to reopen their case in St. Louis, in order to recall Mr. Randolph to the stand.

In his testimony on recall, Mr. Randolph clarified his earlier testimony by explaining that the case (exhibit 13–B), which holds a radio transmitter, is not made by Telectron. Telectron made the transmitter, but the case was made by Prince Gardner.

He also clarified for the record the fact that Randolph Rand sells frames like those here in issue to about 12 or 15 other active accounts, besides Prince Gardner, St. Thomas, and King Leather. These other accounts take over 100,000 units in a year. (R. 78.) On re-cross-examination, Mr. Randolph said that, in 1957, 1958, 1959, and 1960, Prince Gardner used item 3988 (exhibit 1, in the incorporated record) as the frame for leather cigarette cases. (R. 88.) He did not know if Prince Gardner then made anything else with the frame but, if so, he never saw it.

Mr. Harry W. Whiteaker, president of Prince Gardner Co., called by the defendant to testify, stated that he was familiar with item 3988. (Exhibit 1, in the incorporated record.) His firm purchased that item from Randolph Rand Corp. and used it to make cigarette cases. Prince Gardner never used the frame for anything else until Telectron started in 1961 to buy the leather cases for their garage radio transmitter. He had never seen the cases manufactured by Prince Gardner used as a container for cotton. (R. 98.) (In the incorporated case, Mr. Randolph had so testified.) The Telectron radio case and the cigarette case are made by Prince Gardner on the same dies, Mr. Whiteaker said.

Defendant's final witness, Mr. Arthur Ehlert, an accountant employed by Prince Gardner Co., testified that one of his functions with the company is to record purchase transactions. He identified certain invoices of Randolph Rand Corp. to Prince Gardner, and these were received in evidence. (Collective exhibits H-1 to H-4, inclusive.) He stated that the first order received by Prince Gardner from Telectron was early in 1961. (R. 118.)

Before submitting this case, counsel stipulated that, during the period 1957 to 1962, King Leather Co., Indiana, Pa., made, in commercial quantities, only leather cigarette cases from the metal frames purchased by them from Randolph Rand Corp.

Plaintiffs argue that, however one may read the record, the frames of these protests do not bear the mark of special adaptation to commercial use limited to the manufacture of smokers' articles. Defendant's principal contention is that it has rebutted and contradicted, by proofs of record, every element of the *prima facie* case upon which this court based its decision in the earlier *Rand* case, incorporated here. It is true, and this is the meat of defendant's case, that the metal frames of these importations were sold, for the most part, to three firms which actually used them to manufacture leather cases that were designed to contain packages of cigarettes. It is equally true, however, that the leather cases in which the frames were used, were used also for other purposes, although the record shows such use in the years of importations only as promotional samples. In commercial quantities, uses other than for cigarette cases were in years subsequent to the instant importations. At least one witness testified that his firm used the frames, during the years of importation, to manufacture sample stud boxes and pill boxes, but said they had "stalled" commercial production because of manufacturing production priorities. Telectron, in 1961, purchased the leather cases, using these frames, to house its electronic eye garage transmitter. While Telectron's purchases constituted only a fraction of the leather cases sold by the manufacturer, the others being sold as cigarette cases, the quantities were considerable. They are hardly to be classed as "fugitive" sales, as defendant suggests.

In a recent court of appeals decision, *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831, decided December 12, 1963, the facts were that the collector had assessed certain metal articles as parts of automobiles, under paragraph 369(c). Our appeals court held the imported parts were essential parts of internal-combustion engines. Ford Motor Company used the parts in making engines for its automobiles and for use and sale as industrial engines. The merchandise in litigation was entered in the years 1959 and 1960. The evidence showed that, in 1960, $2\frac{1}{4}$ million engines were used in the

manufacture of automobiles and only 10,000 in articles other than automobiles. At least 10 of the 18 metal parts involved were designed for use in automobile engines, but a witness testified that a part "designed for a specific product doesn't mean its only use is that" and that "[o]nce a part is designed for a particular use, many activities within the Ford Motor Company may use it." There seems to have been no testimony as to use in 1959. This court sustained the protest claim that the metal parts were not parts of automobiles, but were dutiable as parts of internal-combustion engines of the carburetor type. The court of appeals affirmed, stating:

* * * The testimony seems clear that the parts were susceptible to use in industrial and marine engines as well as in automobile engines and that they were so used and that from a physical examination of the parts when they were imported into the United States, one could not tell whether they would be used in automobile engines, industrial or marine engines.

The testimony here is clear that these frames were susceptible to use in the manufacture of cases for purposes other than to hold cigarettes; that cases like those used as cigarette cases were also used, albeit in a year subsequent to the years of importation, to house an electronic device that was not a smoker's article; that such frames were also used in various years to make samples designed to promote cases for various uses other than as cigarette cases; and that from a physical examination of the frames at the time they were imported into the United States, one could not tell whether these frames would be used to make cigarette cases or to make cases for other uses.

This brings the facts into line with the facts in *Ford Motor Company*, *supra*, save that here the proofs show the other uses, in commercial quantities, were in a year subsequent to the year of importation. However, in the *Ford* case the evidence, likewise, related to a year subsequent to the year of importation in some of the consolidated cases. Neither party bases any argument on this factor of time difference. It is not mentioned in defendant's brief. It was not mentioned, in the *Ford* case, by the appeals court.

Without suggesting that an extended time lapse between *dedicated* use in a year of importation and later actual use, might not point to a rededication of use effective subsequent to importation, we find this not to be significant here, both because of the relatively short period of the time difference and the evidence of contemporaneous beginnings of a variety of commercial uses that appear to preclude any clear dedication to exclusive use, in the tariff sense.

Defendant has raised two claims that are alternative to the collector's classification. We are asked to find, in the event we hold against the collector's classification of this merchandise as parts of smokers' articles, that these frames are more properly described under paragraph 1527, either subdivision (c)(2), at 55 percent, or subdivision

(d), at 40 percent.   As defendant knows, we may not render judgment which, in effect, would reclassify merchandise outside the limits of the issue as drawn by the collector's classification and plaintiffs' protest. *Innis Speiden & Co.* v. *United States*, 14 Cust. Ct. 121, C.D. 924.   In the event that we should hold one of these alternative provisions more fittingly describes the merchandise, we could overrule the protests without, however, affirming the collector's classification.

The cited provisions of paragraph 1527 are as follows:

(c)   Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

   *       *       *       *       *       *       *

(2)   composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), or (if not composed in chief value of metal and if not dutiable under clause (1) of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, * * *.

(d)   Stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, if of gold or platinum, * * *; if of other metal or metals, plated or unplated, * * *.

Plaintiffs' brief addresses its entire argument to an attack on the collector's classification and the support of its own protest claim. The alternative claims are recited, but not argued.   Defendant, on the other hand, has devoted slightly less than 2 pages, in a 25 page brief, to its arguments in support of the two alternative claims defendant has presented to us.

As we read defendant's argument for paragraph 1527(c) (2) classification, it is, in substance, that because these frames are parts of cigarette cases and because cigarette cases are designed to be carried on or about the person, then it follows that these frames are equally subject to classification either under paragraph 1552, as parts of smokers' articles, or under 1527(c) (2), as parts of articles designed to be carried on or about the person.

One defect of this argument is that we have found that these frames are *not* dedicated to use as parts of smokers' articles.   We have found, on the record before us, that they have several uses.   They are material for manufacture into a number of different articles.

In *Martin M. Stekert and Alltransport, Inc.* v. *United States*, 33 Cust. Ct. 357, Abstract 58386, the collector had classified certain cuff

links under paragraph 1527(a)(2). The record established, *prima facie* at least, that the merchandise was susceptible of various uses. As Chief Judge Oliver pointed out in his opinion, "In such a status, these metal closures are excluded from classification as a 'part' of any particular kind or class of merchandise."

Here, too, these frames are not, as defendant argues, dedicated to use as parts of cigarette cases. They are susceptible to various uses. They are excluded from classification as parts of any particular kind or class of merchandise. The claim for classification as parts, under paragraph 1527(c)(2), is overruled.

The argument advanced by defendant in support of paragraph 1527(d) classification is that these frames are composed of metal and are "suitable for use in the manufacture" of articles designed to be carried on or about the person. This is a conclusory statement, and the court is not assisted with citation of cases, or legislative history, on which defendant relies in reaching its stated conclusion.

In tariff law the term "suitable" as here used, means with respect to an article that it is actually, practically, and commercially fit. *Kahlen v. United States*, 2 Ct. Cust. Appls. 206, T.D. 31947; *Coro. Inc. v. United States*, 41 CCPA 215, C.A.D. 554.

Whether these frames are stampings, galleries, or mesh, such as paragraph 1527(d) contemplates, does not appear. It does appear that they are materials of metal, finished or partly finished, not plated with gold or platinum, and that they are actually, practically, and commercially fit for use in the manufacture of articles valued above 20 cents per dozen pieces, designed to be carried on or about the person, such as (although not limited to) some of the articles that are enumerated in paragraph 1527(c).

The tariff expression "suitable for use" comprehends more than does the more limited tariff expression "parts." *Martin M. Stekert and Alltransport, Inc. v. United States, supra.* "Suitable for use" does not imply or require chief use, but contemplates that there is susceptibility to the expressed use. *United States v. Lorsch & Co.,* 8 Ct. Cust. Appls. 109, T.D. 37222.

In our opinion, classification of the frames, identified as item numbers 3972, 4122, and 3988, under paragraph 1527(d), would be a correct classification. Paragraph 1527(d) is more specific than is paragraph 397, under which plaintiffs claim classification. Paragraph 397 pertains to articles or wares that are not specially provided for. *Martin M. Stekert and Alltransport, Inc. v. United States, supra.* We find that these frames are specially provided for in paragraph 1527(d).

The protests as to merchandise identified as items 3972, 4122, and 3988, are overruled, without affirming the action of the collector.

Protest claim under paragraph 1552 is dismissed.

In all other respects and as to all other merchandise, the protests are overruled.

Judgment will be entered accordingly.