(C.D. 4144)

ARDEN MANUFACTURING COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 9, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Thomas J. McKenna* of counsel) for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Robert Blanc*, trial attorney), for the defendant.

Before RAO and FORD, Judges, and WILSON, Senior Judge

WILSON, Judge: The above two protests were consolidated for purposes of trial. The imported merchandise is invoiced as "Nylon Yarn–15/1–S.D. Second Quality." The consumption entries state that the shipments contain "Nylon Yarn, Singles weighing less than 150 Deniers–15/1–0. N/O 20 Twists per inch." These entries were made at the port of Philadelphia, Pennsylvania on July 2, 1962 having been laden at Bremen, West Germany, the shipper being Parvox, S.A. of Panama City, Republic of Panama.

Counsel stipulated that the merchandise is valued at $1.11½ per pound or more and does not have over 20 turns twist per inch.

The district director of customs at Philadelphia, Pennsylvania,

classified the imported merchandise under the provisions of paragraph 1301 of the Tariff Act of 1930, the pertinent portion of which provides:

> "Filaments of rayon or other synthetic textile, single * * * all the foregoing not specially provided for, * * * weighing less than 150 deniers per length of four hundred and fifty meters, 50 per centum ad valorem; * * * *Provided*, that none of the foregoing filaments shall be subject to a less duty than 40 cents per pound, * * *."

Plaintiff claims under the provisions of paragraph 1301 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, 161, 189, T.D. 54108, reading:

> "Yarns of rayon or other synthetic textile, not
> specially provided for, singles, weighing less
> than 150 deniers per length of 450 meters, and
> not having more than 20 turns twist per inch__  22½% ad val.,
> but not less
> than 25¢ per
> lb."

Other claims in the protests were not urged at the trial nor referred to in plaintiff's brief herein. They are deemed abandoned and will be dismissed. *Continental Arms Corp., Gehrig, Hoban & Co., Inc.* v. *United States*, 65 Cust. Ct. 80, C.D. 4058 (1970), citing *Randolph Rand Corp., J. J. Boll* v. *United States*, 52 Cust. Ct. 107, C.D. 2445 (1964), aff'd, 53 CCPA 24, C.A.D. 871 (1966); *Davies, Turner & Co., B. Axelrod Co.* v. *United States*, 65 Cust. Ct. 337, C.D. 4099 (1970).

The entries, invoices and attached papers in both protests, on plaintiff's motion, were received in evidence without being marked.

The record in *Chester Tricot Mills, Inc.* v. *United States*, 56 Cust. Ct. 532, C.D. 2695 (1966), was incorporated herein over defendant's objection. Exhibit A, a letter dated December 4, 1962, from plaintiff to the appraiser, was received in evidence over plaintiff's objection.

### The Issue

Is the imported merchandise in the two protests herein subject to classification as filaments of rayon or other synthetic textile as classified by the district director, *supra*, or as yarns of rayon or other synthetic textile as claimed by plaintiff, *supra?*

The merchandise involved in the incorporated case was manufactured by "Chatillon," a company in Italy. The court in that case, 56 Cust. Ct. at page 534, stated that the merchandise therein involved consisted of "single strand nylon weighing 15 deniers per length of 450 meters, valued at over $1.11⅑ per pound." The collector at Phila-

delphia assessed duty thereon under paragraph 1301 of the Tariff Act of 1930 at 50 per centum ad valorem.

In the instant two protests, Morris P. Satinsky, a well qualified witness testified that he is familiar with the involved merchandise and that it was used in the manufacture of tricot fabric without any processing between the time of release by customs and the use by him in the manufacture of tricot cloth. The merchandise was taken directly from the pier to his plant where it was manufactured into cloth. He examined the yarn, exhibit 1, in the *Chester Tricot* case, *supra*,[1] for the purpose of comparing it with the merchandise involved herein.

Mr. Satinsky also testified that the yarn in said exhibit 1 is "identical" with the imported merchandise in the case at bar. The record in said *Chester Tricot* case was incorporated herein over the defendant's objection, the court stating that the defendant could "show anything to the contrary." In an effort so to do, defendant's counsel offered exhibit A which was marked in evidence over plaintiff's objection, and by cross-examination of Satinsky. Said exhibit A is a self-serving letter from the plaintiff to the appraiser of merchandise alleging that the yarn herein is "second grade yarn because of the undrawn yarn, variable weights and lack of tails."

Under cross-examination Mr. Satinsky testified that tricot fabric is a fabric that is knitted on a particular type of machine which is designated as "a tricot machine." Asked to describe just what he did to the merchandise after it reached his plant from the pier, he testified (R. 8):

> "Yes, well, it is exactly what we do to all 15 denier yard. The yarn comes in. You take 588 pirn—A pirn is the thing on which yarn is wrapped. It is just a technical name for a holder. The 588 pirns are put on to what we call a warping machine. All the threads are then drawn around the spool. That spool is placed on the tricot machine and knitted into fabric, and that is what we did with this particular yarn."

In the *Chester Tricot* case, 56 Cust. Ct. 532, 536, C.D. 2695, the court stated:

> "At Chester Tricot, the imported nylon material is transferred to warp beams which are then used directly on the knitting machines. The transfer to the warp beams does not produce twist.

> "At Pennwood, the nylon material is placed in the hosiery machine while still on the pirns, that is, without any transfer to spools other than those used for shipment by the manufacturer."

---

[1] Counsel agreed, page 3 of the incorporated record, that exhibit 1, which is a spool of nylon therein, is a Government sample forwarded through channels and is representative of the merchandise covered by the protest, which was assessed, with duty at 50 per centum ad valorem. The importer there, as here, claimed under paragraph 1301, *supra*, at 22½ per centum ad valorem, but not less than 25 cents per pound.

Satinsky further testified that a tail is that little piece of paper glued on to a thread of yarn as shown in exhibit 1 in the *Chester Tricot* case, which holds the thread down; that in his opinion the absence of a tail does not affect the yarn in any way whatsoever, or the character of the yarn, and there is no difference in the processing operation; that the involved merchandise was not first quality while that in the *Chester Tricot* case was first quality; that "* * * the minute you don't have a tail it is second grade. It doesn't change the character of the yarn any drop; nothing. It is just harder for the girl to find, but it is not first grade. I'd say, no, it is not first grade." (R. 14, 15.)

The defendant's brief states that Satinsky produced no sample of the merchandise in the instant case and that his testimony "is inadequate to overcome the presumption that this merchandise is not the same as exhibit 1 in the *Chester Tricot* case, *supra.*" Further that Satinsky "showed by his testimony that he was not qualified to differentiate between drawn and undrawn nylon monofilaments." The court disagrees with the foregoing and is of the view that Satinsky is a well qualified witness. He testified that upon release of the merchandise involved herein "It was used in the manufacture of tricot fabric" without processing of any kind applied to the imported merchandise between the time of release by Customs and the use by him in the manufacture of tricot cloth; that "It was taken from the pier to our plant and manufactured into cloth."

On October 23, 1969 the defendant received a Notice of Trial which indicated that plaintiff would move to incorporate the record in the *Chester Tricot* case at the trial to be held at Philadelphia on November 12, 1969. On October 29, 1969 the defendant received plaintiff's "Pre-trial Memorandum" which likewise indicated that plaintiff would move to incorporate the record in said *Chester Tricot* case at the trial to be held in Philadelphia on November 12, 1969. The defendant had more than ample time to obtain witnesses to testify, or other evidence to prove that the merchandise in the *Chester Tricot* case was not the same, such or similar to that in the instant case. The defendant offered no such proof.

In the *Chester Tricot* case the merchandise consisted of "single strand nylon weighing 15 deniers per length of 450 meters, valued at over $1.11½ per pound." In the case at bar the consumption entries show that the merchandise consists of "Nylon Yarn, Singles, weighing less than 150 Deniers–15/1–0. N/0 20 Twists per inch." Satinsky testified under oath that the merchandise in the *Chester Tricot* case and in the case at bar is *identical*. There is no evidence in contradiction of such testimony.

The defendant's brief at page 6 concedes that "the testimony of a single witness can be sufficient to overcome the presumption of correctness," of the findings of Customs, "where it is certain, convincing and unimpeached," citing *Schmitt* v. *United States*, 5 Ct. Cust. Appls. 312, T.D. 34523 (1914). But it alleges that "the testimony of Mr. Satinsky is neither certain, convincing or unimpeached." We cannot agree.

Defendant offered no independent contrary evidence of its own.

The defendant's brief cites *Wedemann & Godknecht, Inc., a/c Burlington Industries, Inc., et al.* v. *United States*, 59 Cust. Ct. 475, C.D. 3199, 275 F. Supp. 1017 (1967). The brief alleges that the court therein "recognized a distinction between first quality and offgrade material." It was there held that the first quality nylon was a yarn, but that the offgrade nylon fell within the provisions for filaments. The decision of the court at page 481 states:

> "Based upon the record as made herein, we are of the opinion that offgrade perlon processed on a drawtwister machine is not a yarn as classified herein since it has not been shown to be suitable for manufacture into textile fabrics without further processing."

Based upon the record as made herein, we are of the opinion that the imported merchandise *is a yarn* as claimed by the importer since it has been shown to be suitable for manufacture into textile fabrics and has been so used without further processing. Hence the above *Wedemann & Godknecht, Inc.*, case is *not* controlling herein, on the facts in this case.

The defendant's brief also cites *Geo. H. McFadden & Bros., Inc.* v. *United States*, 50 Cust. Ct. 133, C.D. 2401 (1963), and cites the following from page 137:

> "* * * in order for an article to be a yarn, it must be prepared for or suitable for use in weaving, knitting, or otherwise suitable to form a textile fabric. The record herein establishes that the imported Perlon, which is offgrade, is not so suitable. While there is some evidence to indicate that first-quality merchandise containing the same slight twist might be suitable, without further processing, for further manufacture into textile fabric, the involved merchandise is not in such a condition."

The instant merchandise is a yarn prepared for or suitable to form a textile fabric. Satinsky's testimony unquestionably contradicts the foregoing for the instant merchandise for it was actually used to manufacture a textile fabric *without further processing after release from Customs*. The *McFadden* case is therefore *not* controlling in the instant case, for the foregoing reasons.

The incorporated record together with the instant record makes a *prima facie* case to the effect that the involved merchandise herein is

classifiable under paragraph 1301, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, 161, 189, T.D. 54108, as yarns of rayon or other synthetic textile, not specially provided for, singles, weighing less than 150 deniers per length of 450 meters, and not having more than 20 turns twist per inch, and therefore subject to duty at 22½ per centum ad valorem but not less than 25 cents per pound. All other claims in the protests herein are dismissed.

Judgment will be entered accordingly.

(C.D. 4145)