(C.D. 4251)

CASTELAZO & ASSOCIATES
FAMOUS JOBBING CO., INC. } v. UNITED STATES

United States Customs Court, First Division

(Decided August 11, 1971)

*Glad & Tuttle* (*Robert Glenn White*) of counsel for the plaintiffs.

*L. Patrick Gray, III,* Assistant Attorney General (*Glenn E. Harris, Velta Melnbrencis,* and *Harold L. Grossman,* trial attorneys), for the defendant.

Before WATSON and MALETZ, Judges, and WILSON, Senior Judge; MALETZ, J., concurring

WILSON, Judge: Eight protests were consolidated for purposes of trial. Plaintiffs abandoned all claims *except* as to items [for men's rainwear] described in the invoices as "parka suits" items 6420, 6550, 6540, 6760 and 6740 in protests 63/10403, 63/10421, 63/10424, 63/10431 and 63/10444. (R. 14, 18, 19, and plaintiffs' brief pp. 3, 4.) *

Protests 63/11248, 63/10412, and 63/11262 were originally included in the consolidation but have *not* been briefed by either party, and were in effect abandoned during the trial. They are, therefore, dismissed. *Arden Manufacturing Company* v. *United States,* 65 Cust. Ct. 594, C.D. 4144 (1970), and cases cited.

The collector of customs classified the merchandise under paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865, 90 Treas. Dec. 234, 257, and T.D. 53877, 90 Treas. Dec. 280, by similitude under paragraph 1559(a) in use to articles of which india rubber is the component material of chief value, and assessed duty at the rate of 12½ per centum ad valorem. Some of the involved articles were classified directly under paragraph 1537(b) at the same rate.

Plaintiffs contend for classification at 8½ per centum ad valorem under paragraph 1558 of said tariff act, as modified by the General Agreement on Tariffs and Trade (GATT), T.D. 51802, 82 Treas. Dec. 305, for synthetic rubber articles, and as further modified by the Sixth Protocol of Supplementary Concessions, T.D. 54108, 91 Treas. Dec. 150, 203.

The competing statutes are as follows:

---

*Item No. 6740 in protest 63/11262 is now the subject of protest 63/11262–S by order of severance dated December 12, 1966 and, therefore, is not covered by this decision.

As Classified

Paragraph 1537(b), as modified:

"Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for * * *:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other _____ 12½% ad val."

Paragraph 1559(a), as amended:

"Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; * * *."

As Claimed

Paragraph 1558, as modified:

"All articles manufactured, in whole or in part, not specially provided for:
Synthetic rubber and synthetic rubber articles * * * _____ 8½% ad val."

The official papers were received in evidence without being marked "so the court will be informed as to the particular items, description of the merchandise, and can * * * relate the invoiced merchandise to the [dispositions]." (R. 15)

The deposition of Satoru Ito taken at Tokyo, Japan on September 26, 1968, in the Japanese language was marked plaintiffs' exhibit 1. The page numbers therein are the same as appear in an English translation which was received in evidence as plaintiffs' exhibit 1-C, subject to certain corrections or modifications which are noted in pencil (R. 19 to 22). There is no other doumentary or oral testimony.

Mr. Ito testified that for over 19 years he held various positions with Okamoto Riken Gomu Co., Ltd., the manufacturer of the imported merchandise, and its predecessor firms. Through these assignments he became familiar with all the companies' operations and products.

Mr. Ito swore that he made raw materials and that he "basically" knows the components and their costs for the parka suits sold to Famous Jobbing Co., Inc. He then testified at pages 68 and 69 of said exhibit 1-C as to the components, and the costs in dollars for the period from November 1961 through June 1963.

In answer to questions presented to Mr. Ito in cross-interrogatories, he testified (page 71) that Chubei Ebara was directly in charge of the

purchase of materials for articles involved herein from December 1961 through July 1962 as well as for maintaining the manufacturers' books of account.

In *United States* v. *Brown & Co.*, 4 Ct. Cust. Appls. 102, T.D. 33374 (1913), it appears that the manager of a steamship company offered entries in books in evidence to establish the condition of an importation upon its arrival. The manager did *not* make the entries in question, and had no personal knowledge of the facts. He was held to be an *incompetent witness* to prove the entries. So in the case at bar, Mr. Ito does not allege personal knowledge of the facts, and moreover, no witness was offered who had such personal knowledge. The evidence of costs testified to by Mr. Ito, without corroboration, is *not* admissible in proof thereof.

Cited in the *Brown* case, *supra*, is the decision in *Chafee & Co.* v. *United States*, 85 U.S. 516 (1874), wherein the Supreme Court stated that the general rule which governs admissibility of entries in books made by private parties in the ordinary course of trade in their business requires that the entries be made contemporaneously with the transaction to which they relate and shall be made by parties having personal knowledge of the facts. The evidence in the case at bar clearly does *not* meet these basic requirements.

Mr. Ito stated the materials used in manufacturing the items herein involved were (page 74) : RS–26, compound; PR–65, under paste; 1–P, adhesive paste; metal parts (zipper, snaps, etc.) ; staple fiber thread; string; staple fiber moslin #4; and tape. He further stated (pages 78, 79) that RS–26 consists of synthetic rubber, FRS–178 or JSR–1778; zinc powder; white chloride; stearic acid; sulphur; light charcoal calcium; Sunoco wax; paraffin; stimulator DM, M; anti-aging SP, MB, 200; process oil; and gasoline; and that PR–65 consists of synthetic rubber, FRS–182, Isoplen 305; zinc powder; white chloride; stearic acid; sulphur; light charcoal calcium; stimulator TT, DM, M, anti-aging MB, 200; super Beckrcite #1050; and gasoline.

Mr. Ito further testified as to the sources from which the materials to produce RS–26 and PR–65 were purchased (pages 79–81) and described how the materials were used to produce the imported merchandise as processed by his company (pages 81, 82). He also testified as to the quantity of each type of material used in the production of the imported articles (pages 82, 83). He further stated that his company purchased its rubber material from other companies, the natural rubber coming in 10 kg. bales while the synthetic came in 25 kg. pack form (page 84). In response to a question as to the price paid for the natural and synthetic rubber from December 1961 through July 1962, Mr. Ito stated (page 85) : "This I checked, but somehow I couldn't find the figures during that period."

He did state several figures per kg. (page 85) and said that "although this is not an accurate source, according to our purchase order ledger books of materials, there were various kinds of synthetic rubbers, FRS-178, * * * purchased * * *. And as for natural rubber, there was a fluctuation in market price * * *. As for records, this is about all there is left."

Mr. Ito stated that he did *not* have any representative invoices from the supplying companies. His firm did not analyze the rubber materials purchased, nor had any others done so, in order to determine whether the rubber was natural or synthetic, or a mixture of both (page 86).

Mr. Ito stated that all fabrics in the manufacture of the imported merchandise were dyed prior to their assembly with other components by subcontractors. He did not know the cost of the dye, and had no invoices showing the cost of fabrics. He said they were ordered at one price for the dye and labor work (page 87). He testified that the orders placed by Famous Jobbing Co., Inc., contained written specifications but stated, "I don't think we have any such written specifications on file" (page 90).

Inherent in the classification herein is the claim that the imported articles are composed of india rubber in chief value whether directly under paragraph 1537(b), as modified, or by similitude under paragraph 1559(a), as amended. In *United States* v. *Mrs. S. Bacharach*, 18 CCPA 353, T.D. 44612 (1931), it was held to be plaintiff's burden to establish that the component material of chief value of those articles was in fact and law synthetic rubber and synthetic rubber articles under paragraph 1558, as modified, as claimed. The classification was deemed correct. *United States* v. *Victoria Gin Co., Inc., et al.*, 48 CCPA 33, C.A.D. 759 (1960) ; *Kaplan Products & Textiles, Inc.* v. *United States*, 51 CCPA 2, C.A.D. 828 (1963).

Paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, T.D. 53599, reads :

"(b) The words 'component of chief value', wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article involved; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article."

The evidence introduced by plaintiffs fails to sustain their burden of showing by clear, probative evidence that the component material of chief value in the imported articles is synthetic rubber.

The plaintiffs have failed to make out a *prima facie* case. The presumption of correctness which attaches to the collector's classification has not been overcome and remains in full force and effect.

The protests claiming classification at 8½ per centum under paragraph 1558 of the Tariff Act of 1930, as modified by the General

Agreement on Tariffs and Trade (GATT), T.D. 51802, 82 Treas. Dec. 305, for synthetic rubber articles, and as further modified by the Sixth Protocol of Supplementary Concessions, T.D. 54108, 91 Treas. Dec. 150, 203, must be overruled.

Protests 63/11248, 63/10412, and 63/11262 considered abandoned, are dismissed.

Judgment will be entered accordingly.

CONCURRING OPINION

MALETZ, Judge: I concur in the result.